**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: June 29 2012

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 09-38696 |
| | ) | |
| Walter W. Kaiser and | ) | Chapter 7 |
| Helen Kaiser, | ) | |
| | ) | Adv. Pro. No. 10-3109 |
| Debtors. | ) | |
| | ) | Hon. Mary Ann Whipple |
| Done Right Builders, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Walter W. Kaiser, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF DECISION**

This adversary proceeding is before the court for decision after trial on a complaint filed by Plaintiff Done Right Builders to determine dischargeability of a debt owed to it by Defendants Walter W. Kaiser and Helen Kaiser. Plaintiff alleges that the debt should be excepted from discharge under 11 U.S.C. § 523(a)(2)(A). Only Defendant Walter W. Kaiser appeared in court for trial. There was no appearance at trial by his now estranged wife, Defendant Helen Kaiser; she was not served with a subpoena compelling her to appear. *Cf.* Fed. R. Bankr. P. 4002(a)(2). Defendant Walter Kaiser and Plaintiff stipulated at trial to the dismissal of a counterclaim filed by Defendants for violation of the automatic stay.

The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) as a civil proceeding arising in or related to a case under Title 11. This proceeding has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings to determine

dischargeability of particular debts are core proceedings that the court may hear and determine. 28 U.S.C. § 157(b)(1) and (b)(2)(I). This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052.

Regardless of whether specifically referred to in this Memorandum of Decision, the court has examined the submitted materials, weighed the credibility of the witnesses, considered all of the evidence, and reviewed the entire record of the case. Based upon that review, and for the reasons discussed below, the court finds that Defendants are entitled to judgment in their favor on the complaint. In addition, the counterclaim will be dismissed to the extent alleged by Walter Kaiser as stipulated at trial and will be dismissed for lack of prosecution to the extent alleged by Helen Kaiser.

## FINDINGS OF FACT

The debt at issue in this proceeding is a state court judgment against Defendants and in favor of Plaintiff Done Right Builders ("Done Right" or "Plaintiff") in the amount of $27,000. In May or June 2008, Defendants contracted with Done Right to tear down and rebuild the front portion of their residence, which had sustained damaged as a result of car being driven into it. The original contract price for the work was $88,000. However, that was later renegotiated to $122,900 after the parties realized that the back portion of the home also had to be torn down and rebuilt. In addition to the contract work, which was covered under an insurance policy covering Defendants' loss, the parties entered into a number of oral side agreements pursuant to which Done Right agreed to perform additional work on the home, some of which it was agreed would be paid for by Defendants and, as Walter Kaiser ("Kaiser") is a mechanic, some of which was performed in exchange for Kaiser's work on various vehicles owned by Done Right or its principals.

Allstate insured the property, and Kaiser was the named insured under the policy. [*See* Pl. Ex. 6]. Although Allstate originally wanted Done Right to finance the work until it was completed, being a small company, it could not afford to do so and Allstate agreed to pay for the work in installments. It fronted money through CitiFinancial for the work to be completed in stages but still required that the final stage be financed by Done Right to ensure its completion. Allstate also required that the work be completed within six months. Between June 24 and September 18, 2008, Done Right received at least five checks issued from CitiFinancial and made jointly payable to "Done Right and Walter Kaiser." Kaiser had also paid for some of the additional work being done under their oral agreements.

Throughout the months that Done Right was working on Defendants' home, Helen Kaiser repeatedly insisted that additional work be done that was not contemplated under the parties' agreements and that was

not covered under the homeowners policy. Although they purchased some of the "extras" requested by her, such as ceiling fans and lights, in order to pacify her, according to Jason Kidwell, a principal in the company, Ms. Kaiser threatened to fire Done Right if it would not provide all of the "extras" that she insisted upon. Joshua Garlock, also a principal in the company, testified that as they got closer to completing the work on Defendants' home, their dealings with Ms. Kaiser became more difficult. According to Garlock, on one occasion in October 2008, in the midst of Ms. Kaiser arguing about the additional things she wanted done, he was told that he and his workers should leave and not come back. At that time, Garlock called Kaiser who was at work. According to Garlock, Kaiser told him, "I signed the contract" and "I'll deal with her," referring to his wife. Although there is conflicting testimony by Kaiser regarding assurances given, the court credits Garlock's testimony that he was told by Kaiser not to listen to his wife, to finish the job and he would be paid. In reliance on Kaiser's assurances, work on Defendants' home was resumed.

In mid-October 2008, Done Right was ready to begin the final stage of its work on Defendants' home, which required Garlock and Kidwell to borrow a total of $15,000 to finance completion of the work. In light of the difficulties they had with Ms. Kaiser, and knowing that Defendants had to sign off on the house being complete before they would receive the final payment from Allstate, Garlock and Kidwell sought assurances from Kaiser that he was satisfied with their work and that they were going to be paid before borrowing the money and completing the work.

The court credits both Garlock's and Kidwell's testimony that such assurances were given and that they were repeatedly told by Kaiser that they were doing a good job. Their testimony is buttressed by their undisputed testimony that on a Friday night in November when Ms. Kaiser was not around, Kaiser bought pizza and beer after work for Garlock, Kidwell and a few of the workers and that they all "hung out" with him for awhile. Garlock testified that at that time they were again reassured by Kaiser that they were doing a great job and that they deserved their money and would be paid. Without Kaiser's assurances, Garlock testified that they would have cut their losses in mid-October and would not have continued working on Defendants' home.

Garlock testified that in mid-November, on a Monday after the "pizza party" and when Kaiser was at work, Ms. Kaiser became irate about not getting the "extras" that she wanted from Done Right and told Garlock he was not going to get his money if he did not do things the way she wanted. Ms. Kaiser then demanded that he leave the property and told Garlock, "If you don't leave, I'll call the police." Worried that he was not going to be paid, Garlock called Allstate before leaving the premises. At the same time, Ms.

3

Kaiser was calling Allstate. She reported to Allstate that Done Right had completed the work on her home. Satisfied that the final check would be released by Allstate, Done Right left the premises. Thereafter, by transmittal dated November 26, 2008, Allstate released a final check in the amount of $18,790.30 made payable to Helen and Walter Kaiser only. [*See* Pl. Ex. 6]. That check was not turned over to Done Right but was deposited into the Kaisers' bank account and spent by them.

According to Garlock, he and Kaiser got along well prior to the mid-November incident with Ms. Kaiser. When problems arose, he and Kaiser discussed them and they were addressed. Similarly, Kaiser testified that although some issues arose during the course of the work being done, he would talk them over with Garlock and they would be corrected or addressed. Kaiser further testified that he believes things could have been worked out in mid-November but that he "didn't have a say in it" since "my wife was angry and they were angry." According to Kaiser, he did not pay Done Right because he did not believe the job was completed. He testified credibly that he was not going to pay Done Right $18,000 since he had to finish the house.

Defendants commenced a state court action against Done Right on December 15, 2008. Done Right filed an Answer and Counterclaim against Defendants, alleging a claim for breach of contract only. [Def. Ex. A]. During trial in state court, the jury walked through Defendants' house, and Kaiser testified regarding work he had done since Done Right had left. As a result of that litigation, a jury awarded Done Right $27,000, and it awarded Defendants $1,000. [*See* Pl. Ex. 7]. A judgment entry to that effect was entered by the state court on December 11, 2009. [*Id.*].

On December 18, 2009, Defendants filed a petition for relief under Chapter 7 of the Bankruptcy Code. The court credits Kaiser's testimony that Defendants did not discuss bankruptcy until after the trial in state court.

## LAW AND ANALYSIS

Done Right seeks a determination that the debt owed to it by Defendants as set forth in the state court judgment is nondischargeable under 11 U.S.C. § 523(a)(2)(A). A creditor must prove exceptions to dischargeability for individual debts under § 523(a), including the exception for fraud, by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291(1991). Exceptions to discharge are to be strictly construed against the creditor and liberally in favor of the debtor. *Rembert v. AT&T Universal Card Servs. (In re Rembert),* 141 F.3d 277, 281 (6th Cir. 1998).

Section 523(a)(2)(A) excepts from discharge a debt " for money, property, [or] services,. . . to the extent obtained by – (A) false pretenses, a false representation, or actual fraud, other than a statement

4

respecting the debtor's or an insider's financial condition. . . ." In order to except a debt from discharge under this section due to false pretense or false representation, a plaintiff must prove the following elements by a preponderance of the evidence: (1) the debtor obtained money, property, services or credit through a material misrepresentation, either express or implied, that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) the creditor's reliance was the proximate cause of loss. *Rembert,* 141 F.3d at 280-81. A debtor's intent to defraud a creditor is measured by a subjective standard and must be ascertained by the totality of the circumstances of the case at hand. *Id.* at 281-82. A finding of fraudulent intent may be made on the basis of circumstantial evidence or from the debtor's "course of conduct," as direct proof of intent will rarely be available. *Hamo v. Wilson (In re Hamo),* 233 B.R. 718, 724 (B.A.P. 6th Cir. 1999). However, "if there is room for an inference of honest intent, the question of nondischargeability must be resolved in favor of the debtor." *ITT Final Servs. v. Szczepanski (In re Szczepanski),* 139 B.R. 842, 844 (Bankr. N.D. Ohio 1991).

For purposes of § 523(a)(2)(A), "false representations and false pretenses encompass statements that falsely purport to depict current or past facts." *Peoples Sec. Fin. Co., Inc. v. Todd (In re Todd)*, 34 B.R. 633, 635 (Bankr. W.D. Ky. 1983). "'False pretense' involves implied misrepresentation or conduct intended to create and foster a false impression, as distinguished from a 'false representation' which is an express misrepresentation." *Ozburn v. Moore (In re Moore)*, 277 B.R. 141, 148 (Bankr. M.D. Ga. 2002)(quoting *Sears Roebuck & Co. v. Faulk (In re Faulk)*, 69 B.R. 743, 750 (Bankr. N.D. Ind. 1986)).

In this case, Done Right argues that the debt owed by Defendants is a debt for property and services obtained through a material misrepresentation. Specifically, Done Right relies on Kaiser's repeated assurances that it would be paid and that he was happy with the work being done. While a mere breach of a promise to pay will not support a finding of fraud, "any debtor who does not intend to perform a contract from its inception has knowingly made a false representation." *Stifter v. Orsine (In re Orsine),* 254 B.R. 184, 188 (Bankr. N.D. Ohio 2000). Done Right asserts that Defendants never intended to make the final payment on the work done on their home. According to Done Right, that Defendants never intended to make the final payment is evidenced by the totality of the following circumstances: Defendants allowed Done Right to continue to work until the job was substantially complete, Helen Kaiser reported the job complete to Allstate and then kept the final insurance payment, the final check from Allstate was made payable only to Defendants, whereas previous checks had been made payable to both Done Right and Kaiser, and after receiving the final payment and cashing the check, they hired an attorney to prevent Done

5

Right from collecting any further payment. Done Right also asserts that it relied on Kaiser's assurances when it continued working on his home in October and November and when it obtained loans in order to finance and complete the job.

As discussed above, the court credits the testimony of Garlock and Kidwell that Kaiser did in fact assure them that he was happy with their work and that they would be paid. The court also credits their testimony that absent such assurances, they would not have obtained the loans necessary to complete the job and would have cut their losses by leaving the job in early to mid-October. However, Plaintiff has not met its burden of proving that Kaiser intended to deceive it by giving those assurances.

The court believes that Kaiser had been satisfied with the work being done by Done Right before the mid-November dispute with Ms. Kaiser that resulted in Done Right leaving the premises. Both Garlock and Kaiser testified that when an issue arose regarding the work, the two of them would discuss the issue and it would be corrected or addressed. That Kaiser was satisfied with the work is also supported by the fact that he bought pizza and beer for the workers just days before the confrontation with Ms. Kaiser and that Done Right received all payments up until that time.

Kaiser's dissatisfaction with the work done on his home did not arise until Done Right left the job in November. The court credits Kaiser's testimony that he did not make the final payment to Done Right because he did not believe they had completed the work required under their agreements. That he did not believe the work was completed is supported by the fact that Defendants sought the advice of an attorney shortly after Done Right left the job and filed an action in state court against Done Right. While the jury disagreed regarding the extent of work left undone as it returned a verdict in favor of Done Right on its counterclaim in the amount of $27,000, the jury apparently agreed that the work, at least to some extent, was not complete as it also returned a verdict in favor of Defendants in the amount of $1,000. In any event, the court finds that Kaiser's decision to not make the final payment to Done Right was not made until after Done Right stopped working on Defendants' home in November 2008 and involved a contract dispute and nothing more. The totality of the circumstances do not persuade the court otherwise. The court believes that when Kaiser had earlier assured Garlock and Kidwell that Done Right would be paid, he did so with the intent to pay, believing that the job would be completed to his satisfaction.

While it is troubling that Ms. Kaiser called Allstate and represented that the job was compete, apparently in order for Allstate to release the final payment, Kaiser was not present at the time she did so, and he made no such representation. And to the extent that Ms. Kaiser's representation was false, there is no evidence that she intended it to deceive Done Right or that Done Right relied on the misrepresentation

6

to its detriment. At that point, Done Right had already borrowed the money to complete the work and indeed Garlock and Kidwell thought that the work had been substantially completed. Done Right identifies no other misrepresentation made by Ms. Kaiser. In fact, the testimony at trial is that Ms. Kaiser repeatedly made known her displeasure with the work and had asked Done Right to leave the premises as early as mid-October 2008.

The court finds it curious that the final payment received from Allstate was by Allstate check made payable only to Defendants, [Pl. Ex. 6], when the previous checks were all Citifinancial checks jointly payable to Kaiser and Done Right. However, there is no testimony by an Allstate representative, and the record is otherwise silent, as to how and why the check for $18,790.30 was issued in this manner. Moreover, the transmittal for the check states twice that it is payment for "vehicles loss" on May 5, 2008, indicating that it does not relate to the home rebuild, while the check dated September 18, 2008, [Plf. Ex. 5], which is well before the dispute arose, states on the memo line that it is the "LAST PYMNT ON REBUILD OF HOME [sic]." Without more, the court's troubled curiosity remains just that, lacking a factual basis in the record to except that or any other amount from Defendants' discharges on the grounds of fraud, false pretenses or otherwise.[1]

Finally, as evidence that Defendants never intended to make the final payment owed to it, Done Right relies on the fact that Defendants filed their bankruptcy petition shortly after the state court judgment was rendered a year after the dispute erupted into the state court lawsuit. However, Defendants had not even discussed bankruptcy with their attorney until after the trial in state court. The court does not believe that their bankruptcy petition was filed as part of an ongoing plan devised at the time of Kaiser's pre-November 2008 payment assurances in order to avoid making the final payment to Done Right.

## **CONCLUSION**

For the foregoing reasons, Done Right has failed to meet its burden under 11 U.S.C. § 523(a)(2)(A), and Defendants are entitled to judgment on the complaint. Defendants' counterclaim will be dismissed to the extent alleged by Walter Kaiser as stipulated to by the parties pursuant to Fed. R. Bankr. P. 7041 and Fed. R. Civ. P. 41(a)(1)(A)(ii) and (c) and will be dismissed for failure to prosecute to the extent alleged by Helen Kaiser. A separate judgment in accordance with this Memorandum of Decision will be entered

---

[1] Although not stated as a statutory basis for non-dischargeability in the complaint or otherwise in the record, *see* Doc. #1, the court has also considered whether Ms. Kaiser's misrepresentation to Allstate that the job was complete supports exception of at least the amount of the final check from discharge under § 523(a)(4) and (6). *See* Fed. R. Bankr. P. 7015; Fed. R. Civ. P. 15(b). But the lack of evidence in the record of the circumstances around issuance of the final check by Allstate to Defendants for "vehicle loss" beyond her statement that the job was complete is equally fatal to any claim for the amount of the check under § 523(a)(4) and (6) as it is under § 523(a)(2).

by the court.

###